# B. F. Zinser, Appellee, v. The Sanitary District of Chicago, Appellant.

1. Appeals and errors—*when exceptions necessary.* Where an action for damages against a sanitary district was tried, and judgment rendered prior to the act going into force July 1, 1911, dispensing with the necessity for an exception, matters not excepted to are not open to consideration.

2. Appeals and errors—*jurisdiction of Appellate Court to review case involving freehold.* One who has appealed to the Appellate Court, assigned and argued errors on numerous points, and nowhere contended that the court was without jurisdiction to review a case involving a freehold, cannot, for the first time on a petition for a rehearing, question the jurisdiction of the court.

3. Appeals and errors—*fictitious plea involving a freehold.* Where an issue of fact is joined on a plea involving a freehold, and defendant does not offer any evidence to support it, and does not claim, on appeal, that there was any supporting evidence, and does not assign any error which raises any question under the plea, the defense under the plea is a fictitious defense, and the Appellate Court is not deprived of jurisdiction by the fact that the fictitious plea was filed.

4. Appeals and errors—*invited error.* Where it appears that counsel were willing to lead the trial judge into a course of questions and remarks, upon which an assignment of error might be based, error in such questions and remarks will not reverse, if it appears that the judgment is substantially just.

5. Appeals and errors—*when exclusion of map is cured.* The exclusion from evidence, of a map of a farm having the words, "corn," "marsh," "woods," and the like, written thereon, as being written statements of disputed facts, is not harmful where another map is admitted, containing substantially the same things, except that instead of the words designating the crop, the word "cultivated" was used.

6. Appeals and errors—*changes in bill of exceptions.* Where an appellant files a brief and an abstract, upon the assumption that a bill of exceptions would be signed exactly as prepared, and when it is finally settled and signed it does not contain many things contained in the abstract and in the brief, the Appellate Court has no power to make an order requiring the trial judge to make changes in the bill of exceptions.

7. Appeals and errors—*when brief criticising trial judge may not be stricken.* A brief of a party claiming to have been wronged by the demeanor and language of the trial judge and seriously

criticising the judge, will not be stricken from the files, as not being respectful to such judge.

8. SANITARY DISTRICTS—*validity of title of owner of overflowed land may not be questioned.* It is not the intention of the Sanitary District Act, section 19, that a district shall be permitted to question the strength and validity of the title of those who are injured by an overflow of water, produced by the waters of a district channel.

9. SANITARY DISTRICTS—*defective title of owner of overflowed lands will not prevent recovery.* Where plaintiff is injured by the overflowing of waters upon lands which he holds by a conveyance and which he possesses, he cannot be defeated of a recovery against a sanitary district by pleas and proof that his title is not perfect, and that there are outstanding interests which he has not acquired.

10. SANITARY DISTRICTS—*all damages may be recovered where title to overflowed land is perfected after part of damage.* Where a person obtains a deed and a bond, for a conveyance from a widow for land belonging to her minor children who execute a deed, when they become of age, and the main damage from overflows caused by a sanitary district occurs after the ratification deeds of the minors, the owner, having been in possession and paying taxes, may recover for all the damages.

11. DEPOSITIONS—*may be suppressed for laches.* Where after a cause has been at issue for five and one-half years, a party on ascertaining that an aged nonresident witness will attend the trial, if physically able, has the trial set for certain day and gives notice to take a deposition of the witness in another state on oral interrogatories on the same day, a deposition so taken in the absence of the adverse party and not returned until the trial has been in progress for three weeks, is properly quashed.

12. DEPOSITIONS—*when notice is insufficient.* Where under the statute ten days' notice is required, a notice mailed to an attorney on the tenth day before the suing out of the *dedimus*, so late in the afternoon that in the regular course of mail it did not reach him until the ninth day, is not sufficient and the deposition was properly suppressed.

13. CONTINUANCE—*purpose of taking depositions.* Where a cause has been at issue for five and one-half years, and a party having ascertained that an aged nonresident witness will attend, if physically able, has the trial set for a certain day and gives notice to take on the same day a deposition of the witness on oral interrogatories, the delay will preclude continuing or postponing the cause until the deposition can be taken. .

14. SANITARY DISTRICTS—*plea denying plaintiff's ownership of overflowed land is demurrable.* In a suit for damages to land overflowed by water flowing into a river from a channel of a sanitary

district, a plea denying ownership in the plaintiff, amounts to the general issue, and is demurrable.

15. SANITARY DISTRICTS—*when plea in suit by landowner for overflowing is double.* Where a land owner sues a sanitary district for damage from an overflow produced by the waters of a district channel, a plea which avers that the channel was built and opened by lawful authority, and is a lawful permanent improvement, and further, that when the channel was opened, the plaintiff was not the owner in fee simple of the realty described in the declaration, is double, and is subject to a special demurrer.

16. SANITARY DISTRICT—*when plea in suit by landowner for overflowing is a departure.* Where a declaration avers that a plaintiff, suing a sanitary district for damage from an overflow, was the owner and was in possession of the lands, and does not aver that he was owner in fee simple, a plea asserting that he was not the owner in fee simple is a departure from the declaration and does not state a defense.

17. EVIDENCE—*height of water in river.* A diagram showing the rise and fall of a river at a certain point for twenty-five years, based on records of gauge-readings taken at points equidistant from the point in question, is based on speculative evidence, where the witness who prepared the diagram, undertook to determine what the head of the water would be at the point in question, by the head of the water at the equi-distant points, and by determining the slope of the river, and how much of the slope was above, and how much below the point, it being conceded that the slope of the river differed as the quantity of water differed.

18. EVIDENCE—*when statements on map render it inadmissible.* The words, "corn," "marsh," "woods," and the like, on various parts of a map of the land of an owner suing a sanitary district for damages from an overflow of water, make it incompetent as containing statements which may be taken by the jury as proofs of disputed facts.

19. EVIDENCE—*when foundation for admission of map inadequate.* In an action for damages for an overflow from a river, caused by a sanitary district, a sufficient foundation for the admission of maps, plats and diagrams showing the amount of rainfall over a valley tributary to the river, is not laid where the documents are partially based upon records of rainfall kept at various stations, and also based upon the absence of any records, and upon the assumption of what the rainfall must have been at the various other places.

20. SANITARY DISTRICTS—*evidence of purchase price of lands overflowed is inadmissible when improvement has been made.* In an action for injury to land by an overflow produced by the waters of a sanitary district channel, evidence as to what the owner paid

for the land is inadmissible, when he has put in six miles of tile and ditches at a great expense, whereby the land has been greatly improved, and larger crops may be raised.

21. EVIDENCE—*when old records of height of water in river may be excluded.* Where records of gauge-readings showing the height of water in a river, each day from 1867 to 1910, are offered in evidence by a sanitary district sued for causing an overflow, the records prior to twenty-five years back may be excluded, since it is improbable that there are witnesses who could testify to the correctness of the earlier records, and where also in the latter twenty-five years, the tile drain system has greatly changed the flow in rivers.

22. EVIDENCE—*on general offer of competent and incompetent evidence the whole may be excluded.* Where a diagram showing the rise and fall of a river over a long period of years, and based on the records of gauge-readings for the entire period is offered in evidence, but the earlier records on which it is based have been excluded by the court, it is incompetent evidence as to the period covered by the excluded records, and it being a general offer of competent and incompetent testimony, it may be excluded as a whole.

23. EVIDENCE—*when photograph of flood conditions on other rivers inadmissible.* In an action for damages from the overflow of a river, caused by a sanitary district, photographs taken at various places on other rivers contributory thereto are not admissible, where there is no evidence of how long the flood conditions had existed before or after the photographs, or of the depth of the streams.

24. EVIDENCE—*when diagrams based on oral testimony are inadmissible.* In an action for damages to a farm, from the overflowing of a river, caused by a sanitary district, diagrams showing the rise and fall of such river for years, based upon the conclusions of a witness, drawn from records of gauge-readings, and diagrams showing the depth and character of the farm soil, based upon the testimony of a witness who dug test holes, are inadmissible; being an attempt to incorporate oral testimony into written form, which under the Practice Act, section 76, the jury could take to their room; and it is immaterial that no request was made that the papers should be sent to the jury room.

25. EVIDENCE—*judicial notice.* Where land bought in 1894 is damaged by an overflow of water, caused by a sanitary district in 1900, judicial notice will be taken that there was a large rise in the value of real estate generally, throughout Illinois, after the land was bought.

26. DAMAGES—*measure of damages where land overflowed.* Where land is overflowed by water produced by a sanitary district channel, and at the time the channel was opened no water had reached the land, the measure of damages is not the depreciation in the

Zinser v. Sanitary District of Chicago, 175 Ill. App. 9.

value of the land just after the channel was opened, but the question is, how much has the fair cash market value of the land, as it was prior to the opening of the channel, been depreciated by the opening and operating of the channel.

27. DAMAGES—*when for damage by overflowing not excessive.* Where by the overflow of farm land by a sanitary district, its productivity of corn was reduced from eighty bushels per acre to almost nothing, a verdict for $15,000, a trifle over $34 an acre, was not excessive.

28. DAMAGES—*elements of damage on permanent injury by overflow of water.* In an action for damages for the permanent injury to land overflowed by water, the jury have a right to consider what the subsequent result, in fact, has been.

Appeal from the Circuit Court of Woodford county; the Hon. G. W. PATTON, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed June 7, 1912. Rehearing denied June 27, 1912. *Certiorari* denied by Supreme Court (making opinion final).

FRANK J. QUINN, for appellant; JOHN C. WILLIAMS, B. M. CHIPERFIELD and WALTER E. BEEBE, of counsel.

BARNES & MAGOON, for appellee; THOMAS KENNEDY, of counsel.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

B. F. Zinser sued the Sanitary District of Chicago to recover damages for injuries which he alleged were caused to 440 acres of his farm in the Illinois river bottom across the river from Chillicothe and a couple of miles below. His declaration alleged permanent injuries to the land by the overflow of said land by waters flowing into the Illinois river through the channel of the Sanitary District. Numerous pleas were filed and issues were joined thereon except one plea and upon a jury trial Zinser had a verdict of $15,000. A motion by the Sanitary District for a new trial was denied and judgment was entered on the verdict and the Sanitary District prosecutes this appeal therefrom.

Appellant filed a plea denying ownership in appellee and a demurrer was sustained thereto. The plea amounted only to the general issue and the demurrer was properly sustained.

When the time arrived for filing a complete record and abstracts and briefs by appellant a bill of exceptions had not been signed. Appellant was granted by this court an extension of the time in which to file a complete record, and the abstracts and briefs. As the time approached the bill of exceptions had not yet been settled nor signed though a copy thereof had been placed in the hands of the trial judge. Instead of applying to this court, or to the judges thereof in vacation and obtaining, as appellant might have done, a further extension to a suitable period beyond the time when the bill of exceptions should be settled and signed appellant made an abstract of a copy which it had of that which it had tendered as a bill of exceptions and prepared briefs upon the assumption that the bill of exceptions would be signed exactly as prepared. In fact some 90 objections were made by appellee to matters in the bill of exceptions and when it was finally settled and signed many things contained in the printed abstract and in the briefs of appellant were not contained in the bill of exceptions. If anything was omitted from the bill of exceptions which appellant had a right to have inserted or if anything was inserted which appellant had a right to have omitted the law furnished appellant a legal remedy which appellant did not pursue. Instead, appellant sought to have an order entered in this cause requiring the trial judge to make various changes in the bill of exceptions. We had no power to make any such order in this case and that application was denied. The course pursued leaves in the abstract and in the argument of appellant numerous matters not supported by the bill of exceptions. Appellant has very seriously criticised the trial judge, and appellee has sought to have appellant's briefs stricken from

the record, because, as appellee claims, it is not respectful to the trial judge. We have not granted the motion to strike such briefs from the files because we conceived that if appellant had been wronged by the demeanor and language of the trial judge it had a right to have the matter investigated. Upon a consideration now of the things complained of we find that a considerable portion of them are not in the bill of exceptions. The trial judge is the sole arbiter of what actually occurred at the trial and of what shall go into the bill of exceptions and appellant not having sought any legal method of correcting the same the bill of exceptions as signed must be taken by us as true and correct. That therefore eliminates one portion of the matter complained of. As to another portion of the matters complained of no exception is preserved in the bill of exceptions. This cause was tried and judgment rendered prior to the act going into force July 1, 1911, dispensing with the necessity for an exception, and the case is no doubt governed by the statute as it was before that date. The matters not excepted to are therefore not open to consideration. In another portion of the matters excepted to the trial court was within its rights in questions propounded and matters said in ruling. In still another portion the things said and questions put cannot be fairly said to have been injurious to appellant. As to the remaining things of which complaint is made it is difficult to say where the real responsibility rests. There are things in the bill of exceptions which tend to show that some of counsel for appellant were willing to lead the trial judge into a course of questions and remarks upon which appellant might base an assignment of error. And we conclude upon an investigation of all these matters and in view of the conduct of counsel that we ought not to reverse this judgment on the ground of any questions put or words uttered by the trial judge, if it shall appear that the judgment is substantially just.

On the day set for trial appellant had given notice to take a deposition at Bellwood, Nebraska, on oral interrogatories. Appellee and his counsel attended the trial and did not attend the taking of said deposition. The trial began on September 6, and on the same day appellant caused an attorney to appear at Bellwood and take said deposition. The deposition was not filed until September 29, and on that day appellee moved to quash it and that motion was granted. Appellant contends that the court should have postponed or continued the cause till said deposition could have been taken and that it should have had the benefit of said deposition on the trial and that the deposition should not have been quashed.

This suit was begun on January 6, and service had on January 7, 1905, more than five and one-half years before the trial. Issues were joined in the case years before the trial. The witness at Bellwood was an old man and no reason is shown why his existence and desirability as a witness should not have been known to appellant years before; he being a former owner of part of the land in question. Early in the summer of 1910 and after the case had been specially set for the first day of the September term, 1910, by the express procurement of appellant as shown by the bill of exceptions, appellant's attorney ascertained that this witness would come to the trial if he was physically able. We are of opinion that appellant could not wait more than five and one-half years and fail to take the deposition of an old man, whose health might at any moment fail and who could not be compelled to attend, and then disarrange this important trial and postpone the day of the trial by giving notice to take this deposition in Nebraska on the very day set for the trial. Appellee was not required to abandon the trial nor to employ so large a force of attorneys that one could try the case while another was taking this deposition. Moreover appellant did not give the notice required by law of the suing out of the

deposition.  Ten days' notice was required and on the tenth day before the suing out of the dedimus appellant mailed a notice to appellee's attorneys so late in the afternoon that in the regular course of mail it did not reach them until the ninth day.  Due notice not having been given the deposition was properly suppressed and for laches in not taking the deposition long before the court properly refused to delay the trial.

It is argued by appellant that appellee's cause of action for permanent injury to his land arose on January 17, 1900, the day when the water of the Sanitary District was turned into the Sanitary District channel at Chicago and that appellee did not on that day own the entire interest in all of these lands and that therefore he should not have been permitted to recover for all the damages.

Appellee bought a part of these lands in 1892 and a part in 1894.  A part of that bought in 1894 was owned by two minors.  Appellee bought and paid for the land and obtained a deed therefor and a bond by the widow, Mrs. Meister, agreeing to procure a conveyance by her two minor children when they arrived at age.  Appellee then took possession thereof and continuously thereafter occupied and farmed the entire land.  One minor became of age in 1899 and then executed a deed to appellee and the other minor, Mary Meister, came of age in 1901 and in 1902 executed a deed to appellee.  But a comparatively small amount of water was turned into the Sanitary District channel during the first two or three years and the main damage was inflicted after Mary Meister made the deed.  We are of opinion that appellee having a deed for the land and having a contract for the conveyance of the Mary Meister interest to him and being in possession of all of the land and paying taxes thereon had a right to institute this suit as to all of the land; and that Mary Meister having ratified the contract made in her behalf and conveyed the land to

him in 1902, no legal obstacle is shown to the maintenance of this suit by appellee and his recovery of all the damages.

Appellant argues that the court erred in not permitting it to prove what Zinser paid for this land in 1892 and 1894; and then elsewhere it argues that it has proved how much he paid and thereon based an argument that the present verdict is excessive. The record is so voluminous that we have not been able to ascertain how appellant got the price paid into the record. But we are of opinion under the facts of this case that it was not proper to compel appellee to state what he paid for the land. After he bought it he put in over four miles of tile and dug a deep ditch, about two miles of which was in the land here involved, to receive the discharge from the tile and expended in that manner $2,465, besides the cost of hauling the tile and filling in the ditches. The proof shows that within two years after this tiling was done the land was greatly improved and that appellee thereafter raised 80 bushels of corn per acre. We think the court may also take judicial notice that there was a large rise in the value of real estate generally throughout the state of Illinois after appellee bought this land. We therefore conclude that the court did not err in refusing to permit him on cross-examination to be asked what he paid for this land in 1892 and 1894.

Appellant offered in evidence a mass of maps, charts, records of water gauges, diagrams, diagraphs, photographs and other papers of various kinds. Some of these were admitted and some of them were not. It is impossible to discuss them all in this opinion but we will give a few as illustrative of the character of this proof generally.

Appellant offered in evidence a record professing to have been kept by different departments of the United States Government showing the height of the water above a certain low water plane once each day on each day of each month from the years 1876 to 1904

inclusive as taken at Peoria; and also a record of gauge readings at the Peoria dam of the Peoria Water Works Company once each day on each day of each month in the years 1895 to 1904 inclusive, and also a record of the readings of a gauge kept at the Santa Fe Railway bridge at Chillicothe giving the like details there for the years 1903-1904; and a record of gauge-readings at Lacon kept by the U. S. Government for 1904; and also a record of gauge-readings kept by the State of Illinois at Henry, Illinois, once each day for each day of each month of the years from 1869 to 1904 inclusive. The court admitted these gauge-readings for the years 1885 and the subsequent years but declined to admit those prior to 1885. We approve of these restrictions. The trial was in 1910, and the court let in all gauge-readings for the preceding twenty-five years, so far as appellant offered them. Obviously appellee had no means of disputing these readings or showing any imperfections therein if he desired to do so except by the memory of living individuals and if the readings had gone back further than twenty-five years it is extremely improbable that witnesses could be found whose reliable memories would give appellee any information as to whether these earlier records were correct or complete or the water was at any different stage from that shown by said records. Moreover it is a matter of common knowledge that the tile drain system has greatly changed the flow in the rivers and that it has mostly been installed since 1867. After the gauges from the years 1885 down had been admitted appellee called a witness who had prepared a paper which appellant then offered which is styled a hydrograph of the Illinois River at the Santa Fe Railway bridge at Chillicothe. This was a diagram by which it was sought to show the rise and fall of the Illinois River at that point for the years 1867 to 1899 inclusive by means of a wavy line. The court refused to admit the paper. To begin with, the witness had no independent knowledge upon the subject and

had drawn this from the gauge-readings already re-
ferred to. As the gauge-readings prior to 1885 had
not been admitted the basis of this hydrograph for the
period prior to 1885 was not in evidence and the
hydrograph was therefore incompetent for those years.
The offer was only a general offer of the paper or
document for the whole period. All of it was incom-
petent prior to the year 1885, and where there is a
general offer of competent and incompetent testimony
in one offer the court is not obliged to distinguish it
but may properly reject the whole. The rule is thus
stated in Jones on Evidence, 2nd Ed., sec. 894: "When
the offer of testimony includes that which is admis-
sible with that which is not, and the competent and
the incompetent are blended together, it is not the duty
of the court to separate the legal from the illegal, but
the whole may be rejected when objection is made."
The court therefore did not err in sustaining the ob-
jection. But there were other reasons for seriously
doubting the propriety of this testimony, if the offer
had been confined to the years 1885 and subsequent
thereto. No gauge-readings at Chillicothe had been
put in evidence, except for a single year. Henry and
Peoria are nearly equi-distant from this land, Henry
above and Peoria below. This witness undertook to
determine what the head of the water would be at
this land by its head at Henry and at Peoria by these
gauge-readings. He assumed to determine the slope
of the river and how much of that slope was above and
how much below appellee's land. He conceded that
the slope of the river differed as the quantity of the
water differed; and his conclusions on that subject were
extremely speculative, and their correctness had not
been determined by any test offered in evidence. But
further, by offering this paper appellant sought to
get on to a paper and into evidence the testimony of
this witness as to the conclusions drawn by him, and
to have that paper in a position where it would be
entitled to be sent to the jury room when the jury re-

tired to consider their verdict. We doubt if this testimony of this witness was of such a character that appellant had a right to thus project it into the jury room, where the language of his witness could not be taken in writing under the law prevailing in this state.

Appellant caused a witness to dig a number of test holes or pits in different parts of appellee's farm and had this witness testify to the depth of vegetable mould, soil, sand, clay, etc., which was found by him in each hole. The witness then produced certain colored diagrams by which he had sought to illustrate and put on paper his testimony, and also another diagram in which in words such as sand, shale, clay, black soil and the like he embodied his testimony as to each test hole. These diagrams were offered in evidence and rejected. If they had been admitted in evidence then appellant would have been entitled to have them go to the jury room. Appellant might just as well have caused the evidence of this witness to be reduced to writing and then have introduced this writing in evidence and procured its transmission into the jury room. We are of opinion that this skilful attempt to put the substance and meaning of the testimony of appellant's witnesses into diagrams and charts and thereby prepare them to go to the jury room, where these witnesses could not go, was properly refused in this and numerous other cases in this record.

Appellant offered certain maps or plats of appellee's land upon which the draughtsman had placed the words "corn," "marsh," "woods," and the like, in various parts of his land. We think that these statements upon the plats or charts made them incompetent under the suggestions in Justen v. Schaaf, 175 Ill. 45, where it was held that the court must see that the plat or map does not contain any written statements which may be taken by the jury as proof as to disputed facts. But the court admitted another plat which contains substantially the same thing, ex-

cept that instead of the words designating the crop the word "cultivated" was placed upon different parts of the farm, and we are of opinion that appellant had all that it was entitled to upon that subject.

Appellant offered maps, plats or diagrams which were supposed to show the amount of rain fall over the valley tributary to the Illinois river, but the entire examination of the witness who prepared it showed that while it was partially based upon records of rainfall kept at various stations, it was also based upon the absence of any records and upon assumption of what the rainfall must have been at various other places, and we conclude that the foundation laid for this was inadequate and the objection properly sustained, where these documents were not admitted.

Appellant offered photographs taken at various places on the Desplaines river and at various places on the Kankakee river in Indiana and Illinois, many of which the court did not admit. These were views of the conditions existing at the particular moment of time when the photograph was taken, and to a large extent were without any evidence to show how long these conditions had existed before or existed after the photographs. Such photographs can easily be deceptive. That which looks like a great flood may be the spreading out of a small amount of water over a wide, flat surface. The depth of the stream where these photographs were taken was not shown and the jury could not know how great the volume of water then was. It is obvious too, that appellee could not in the midst of the trial call people from Indiana and other places to prove how deep this water was, how great its volume, how swift its current, or how long continued it had been and we think this class of evidence of facts so remote would have been of very little value in enabling the jury to determine the facts.

The observations we have thus generally made apply in various ways to many papers which the serv-

ants and witnesses of the Sanitary District had prepared whereby to put into the case and into the jury room many things, which, if competent, should have been proven only by oral testimony.

The most important question is whether this judgment is excessive. Plaintiff has a valid cause of action and his land has been much injured. In the early part of our investigation of the evidence we were much impressed by the claim of appellant that the damages awarded were excessive. A further study of the evidence has brought us to a different conclusion. The verdict is well within the range of the evidence. The testimony introduced by appellee would warrant a verdict for twice the amount here rendered. The jury have not been governed by passion or prejudice. The exceedingly meager estimate placed upon the injury by certain witnesses is evidently very much too low. When the evidence of those who are most familiar with the land and its history and its productive capacity is considered we conclude that appellee has been injured to the amount of the verdict. The evidence was very voluminous and the limits of an opinion will not admit of a recital of the testimony. The verdict was a trifle over $34 an acre for the land involved in this suit and there is much evidence to support that conclusion. By the tiling the land had been made exceedingly valuable for the raising of corn, according to the evidence. Prior to the coming of the Sanitary District water the land was usually overflowed in the spring and in the autumn but the spring floods went away so early as to enable the tile to dry the land in time for the planting of a crop of corn, and the fall floods did not come on till after the corn had matured. These floods coming in that way of course enriched the land. Occasionally there were severe floods at short times which destroyed or greatly injured the crops in a particular year, and on the other hand a very dry season made this especially productive because it was calculated to withstand the

drouth. The Sanitary District water came so high and flooded the land so long as to make it of slight value in the production of corn.

Complaint is made of the action of the court on certain instructions, especially upon the measure of damages. It is the contention of appellant that the measure of damages is the difference between the fair cash market value of this land just before and just after the waters were turned into the Sanitary District channel at Chicago on January 17, 1900. It is obvious that a strict application of that rule would be most unjust, because at that time no water had reached this land, and only a comparatively small amount of water was turned into the channel at first. No one knew then how the flow of that water would affect the Illinois River. The true question is, how much has the fair cash market value of this land as it was prior to January 17, 1900, been depreciated by the opening and operating of the channel of the Sanitary District of Chicago, and that is a matter which has developed as the years went by. It is clear that where the suit is for permanent injuries the jury have a right to consider what the subsequent result in fact has been, as held in Suehr v. Sanitary District of Chicago, 149 Ill. App. 328, and 242 Ill. 496. While some of the instructions upon that subject may have been awkward in expression yet we believe they were calculated to lead to a correct conclusion and to an ascertainment of the injury which appellee has in fact sustained.

*Affirmed.*

DIBELL, P. J. In a petition for a rehearing appellant argues that we have no jurisdiction to decide this case, but should have transferred it to the Supreme Court under the statute. Appellant appealed to this court; it assigned errors here; it argued those errors; and no where contended that we were without jurisdiction. It did not move to transfer the case to the

Supreme Court. It sought to have us reverse the judgment and remand the cause, and was ready to accept from us a favorable judgment. Thirty of the thirty-one errors it assigned raised questions which did not involve a freehold. We doubt if appellant should be permitted for the first time on a petition for a rehearing to question our jurisdiction, but rather are of opinion that the rule should be applied that, having appealed to this court and assigned errors of which we had jurisdiction, it must be held that it waived any error of which we did not have jurisdiction.

Appellant filed seven pleas, the first the general issue, and the seventh an ordinary plea of *liberum tenementum* in which appellant alleged that the close in the declaration mentioned was at the several times when, etc., the close and freehold of the defendant, and that it committed the several supposed trespasses in the said close as it lawfully might. That seventh plea involved a freehold and an issue of fact was joined thereon. But appellant did not offer any evidence to support it, nor does it now claim that there was any evidence to support the plea; and it has assigned no error which raises any question under that plea. It begins its original brief here by stating that appellee purchased this land, part of it in 1892 and the rest in 1894, and it everywhere concedes him in possession of the land from that time on. A defense under that plea was clearly abandoned, or rather this was a fictitious defense which it never sought to sustain; and we are of opinion that we were not deprived of jurisdiction by the fact that this fictitious plea was filed. This would furnish an easy way to avoid the jurisdiction of this court in all such cases.

The thirty-first assignment of error is that the trial court in sustaining the demurrer of plaintiff to defendant's plea denying title in plaintiff to the lands described in the declaration at the time the cause of action arose. This refers to the second plea. The

demurrer thereto was general and special. Among the special causes assigned were that the plea amounted to the general issue, that it was double, that it concluded improperly, and that it pleaded conclusions instead of facts. The plea was double. It alleged that the channel of the Sanitary District was built by authority of the law of the State of Illinois and in strict accordance therewith, and was opened January 17, 1900, in accordance with law, and then was and from thence hitherto has been and still is a lawful, permanent structure and improvement. It then alleged that on said date when the channel was opened plaintiff was not the owner in fee simple of the real estate described in the declaration or any part or portion thereof. It is obvious that this is an attempt to set up two different defenses. Again, the declaration did not aver that plaintiff was the owner in fee simple. It averred in certain counts that he was the owner and in possession of the lands, and in other counts that he was the owner and in lawful possession of the lands. If he had proved a less estate than a fee he would have been entitled to recover. This plea therefore which asserted that he did not have the fee simple title was a departure from the declaration and did not state a defense to the declaration. Moreover, so far as it answered the declaration it was merely equivalent to the general issue, for plaintiff averred that he was the owner and possessor of the land, and was required to prove that allegation in order to recover, since the general issue denied the allegations of the declaration. There is a great difference between this second plea and the seventh plea above stated which was indeed a plea of *liberum tenementum*.

Since the Appellate Courts were organized there have been many suits in this state against railroads, drainage districts, sanitary districts and the like for overflowing land of the plaintiff. In every such case the plaintiff has been obliged to allege and prove that he owned the lands overflowed. It has never been

supposed that thereby the Appellate Courts were deprived of jurisdiction of such cases, but on the contrary they have been taken to the Appellate Courts instead of the Supreme Court, and often from the Appellate Courts to the Supreme Court, and the jurisdiction of the Appellate Court has never before been qustioned because plaintiff was obliged to prove ownership in order to recover. The second plea was in bar of the whole declaration, and there is no pretense that there is any state of facts in this record which would entirely bar appellee's recovery. What appellant claims is that appellee did not have the entire title to the land when the waters of the Sanitary District were turned in, but that a fragment of the title was afterwards acquired by him. The fact is that he bought these lands in 1892 and 1894 and paid for them and obtained deeds for the entire property and took possession and has ever since held possession as the owner. There was an outstanding interest which was not then conveyed to him, though his deeds described and purported to convey the entire land. He had possession, which is in itself a title. The Sanitary District Act, Sec. 19, requires the Sanitary District to compensate those it injuries by the increased flow of water. We are of opinion that it was not the intention of that act that the Sanitary District should be permitted to question the strength and validity of the title of those who are injured by the overflow of water produced by the waters of the Sanitary District channel.

Suppose appellee had never acquired this outstanding interest. Suppose that the two minor children in question, knowing that their mother had obtained full payment for the land, had never asserted any right to a share in the title to these lands. Could the Sanitary District make that contention for them? Suppose that some where in the claim of title from the U. S. Government to appellee there is a missing link or a flaw in some conveyance. May the Sanitary District when

sued for damage by a person occupying and claiming to own land which its waters have injured, be permitted to prove that there is some person in existence who possibly might sue the party in possession of the land and wrest it from him? We are of opinion that the Sanitary District Act does not confer upon the Sanitary District the right to litigate such questions, and that where a plaintiff is injured by the overflowing of waters upon lands which he holds by a conveyance and which he possesses, he cannot be defeated of a recovery by the Sanitary District by pleas and proof that his title is not perfect and that there are outstanding interests which he has not acquired.

In support of the ruling of the court below that the oral evidence of witnesses could not be incorporated into diagrams and diagraphs and other papers and admitted in evidence in that written form and thereby reach the jury room, we further cite the recent case of C. & W. I. R. R. Co. v. Heidenreich, 254 Ill. 231. Appellant argues that it had not yet requested that these papers be sent to the jury room and might not have made that request at all, and therefore the papers should have been received in evidence even if they were not competent to go to the jury room. Section 76 of the Practice Act authorizes all such documents, other than depositions, to be carried from the bar by the jury, and if they had been properly admitted in evidence appellant would have had a right to insist that they go to the jury room. Because they contained matter which was not proper to go to the jury room, they therefore were not competent evidence.

The petition for a rehearing is denied.