172    APPELLATE COURTS OF ILLINOIS.

Hunter v. The Sanitary District of Chicago, 179 Ill. App. 172.

## Medora Hunter et al., Appellees, v. The Sanitary District of Chicago, Appellant.

### Gen. No. 5,592.

1. PLEADING—*variance between counts.* In an action for injuries caused to land by waters it is not a variance that in some counts plaintiffs allege they are absolute owners while in others they allege ownership subject to the homestead and dower rights of their mother.

2. DOWER—*right of possession.* Unassigned dower does not give the right of possession.

3. EVIDENCE—*when bas-relief model of tract is inadmissible.* In an action for damage caused to land by waters it is not error to refuse to admit in evidence a wooden model of the surface in bas-relief which magnifies the vertical scale fifty times from the horizontal scale.

4. INSTRUCTIONS—*evidence.* In an action for damage caused to land by waters of a sanitary district where a deposition made by a former owner in filing a claim against the state for damages from the erection of a dam, stated the lands had been destroyed, it is improper though not reversible error to instruct the jury that there is no evidence that the former owner received any compensation or damages because of the dam.

5. INSTRUCTIONS—*when party cannot complain of instructions.* A party who has offered a certain class of instructions cannot complain of instructions of the same kind given at the request of the opposite party.

6. DAMAGES—*possession necessary to recover for damage to land.* In an action for damage caused to land by waters of a sanitary district an instruction that open, peaceable, notorious and exclusive possession constitutes sufficient proof of title in plaintiffs for the purposes of the suit is properly given.

7. SPECIAL INTERROGATORIES—*when properly refused.* Evidentiary interrogatories are properly refused.

8. EVIDENCE—*declarations of former owner as to value of land.* In an action for damage to land, declarations of the former owner during his ownership are competent evidence against the heirs succeeding him in title.

9. DAMAGES—*when excessive.* In an action for damage to 160 acres of land by waters of a sanitary district, a remittitur of $3,000 will be required on a judgment of $9,000 where the evidence shows the land was unfit for cultivation before the waters of the sanitary district affected it and the improper remarks of counsel . for plaintiff were such as would tend to aid in producing an excessive verdict.

Appeal from the Circuit Court of Woodford county; the Hon. T. M. HARRIS, Judge, presiding. Heard in this court at the October term, 1911. Affirmed upon remittitur. Opinion filed November 13, 1912.

FRANK J. QUINN, JOHN DAILEY and WALTER E. BEEBE, for appellant; JOHN C. WILLIAMS and B. M. CHIPERFIELD, of counsel.

BARNES & MAGOON, for appellees; THOMAS KENNEDY, of counsel.

MR. JUSTICE WILLIS delivered the opinion of the court.

This suit was brought in January, 1905, by Medora, Emily M. and Clara Hunter against the Sanitary District of Chicago to recover damages for the injury caused to their lands by the waters of said Sanitary District. The lands involved in the declaration were: the west half of the northeast quarter of section 15; the east half of the northwest quarter of section 15, in township 28 north, and of range 3 west of the third P. M. in Woodford county, and other lands next south of those just described. Upon the trial and in answer to . a special interrogatory, the jury found defendant not guilty as to said other lands. No cross errors are assigned by plaintiffs and therefore the questions litigated concerning said other lands are not before us. On a jury trial defendant was found guilty as to the 160 acres in the north half of section 15 and plaintiffs were awarded damages in the sum of $9,000 and, a mo-

tion for a new trial having been denied, judgment was rendered on the verdict, and defendant below appeals.

The declaration consisted of twelve counts, in the first three of which it was alleged that the appellees were the owners, and possessed of, these lands, subject to the dower and homestead rights of their mother therein, while the remaining counts alleged that said appellees have been and are the owners and lawfully possessed of said lands. It is contended by appellant that there is a variance in these allegations which is fatal to appellees' action; that, having first alleged their ownership subject to the homestead and dower rights of their mother, they cannot in other counts be permitted to set up that they are the absolute owners; and that, having set up their mother's rights, they are bound to prove the amount of depreciation of the interest of appellees by deducting from the total depreciation the amount by which their mother's rights have been depreciated. We are unable to agree with the contention of appellant in this respect. A plaintiff may state his cause of action in one way in one count of his declaration and in another way in another, and he may claim more in one count than in another. Besides, there is no proof that dower had ever been set off to the mother of appellees, and unassigned dower does not give the right of possession. Heisen v. Heisen, 145 Ill. 658. The proof shows that the mother of appellees was not in possession of the land here in controversy and she therefore could not have maintained an action for an injury to the land. Her dower was a mere right of action until assigned and was not an estate in these lands. The proof shows that neither the appellees nor their mother were living upon the land in question. East of that part of the land as to which defendant was found not guilty is a farm of 120 acres, owned by appellees but separated by a highway from the land as to which a verdict of not guilty was returned; and it is upon this 120 acre farm remote from the land as to which defendant was found guilty,

that the home buildings are located, and there they have apparently been for a long time. It is obvious from the testimony of the value of the land in that vicinity that this home farm is worth more than $1,000 and, if a homestead had been assigned to the widow, it must have been assigned in that land where the home buildings were situated. The proofs shows that the appellees were the sole heirs of their father, the owner of this land, who died intestate, and that ever since his death in 1898 they have been in the sole and exclusive possession of the lands now in question, so that, if the mother has any possible homestead right in this 160 acres, a separate and distinct tract of land from that on which the home buildings are located and on which the mother lives, still she has never attempted to enforce the right. Practically she has no such homestead right in these lands while occupying a homestead elsewhere.

The court below refused to admit in evidence a wooden representation of the surface of this tract of 160 acres in bas-relief, and appellant complains of that ruling. The evidence shows that the vertical scale of this model had been magnified fifty times from the horizontal scale and that the model therefore would show the slopes or elevations of the land fifty times greater than they really are. This is not the actual condition of the land and would tend to mislead the jury and to make the land appear to them as a steep side hill with deep ravines, unless they fully understood the difference between the horizontal and the perpendicular scales used. While it might not have been error to permit this to be introduced in evidence with a full explanation, still we are of opinion that it was not calculated to aid the jury and that it was not error to refuse to admit it. Complaint is made by appellant of the refusal of the court to admit in evidence various other exhibits but we fail to see that the presence of any of them would have assisted the jury in any way. See our discussion of this general subject in Zinser v. Sanitary District, 175 Ill. App. 9.

Appellees claimed title to the land here in question, which was about three miles from the Illinois river, as sole heirs of William Hunter, who died intestate in 1898. The proof showed that William Hunter had owned this land for many years and that in 1877, when the Copperas Creek Dam was erected, he filed a claim against the State of Illinois for the injury done to his land by the construction of the dam. His deposition, taken at that time, was introduced in evidence in this cause by appellant, and therein he stated that, by reason of such damage, "much of the lands had become water-soaked and soft to such an extent that they no longer bore animals with safety, and had become unproductive, liable to frequent destructive overflows, and will so remain forever." In July, 1889, he gave another deposition in the same cause, in which he said: "I was mistaken at the time of filing my claim; the damage is greater than when I gave my testimony at the former hearing. Since then we have found that it has been growing worse and worse up to the present time; that there is no cessation; that the lands remain sour and are getting worse and worse every year." These statements referred to the lands involved in this proceeding. In this connection the court instructed the jury as follows, at the request of appellees:

"You are instructed that there is no evidence or testimony in this case that William Hunter has received any compensation or damages for any injury or damage claimed to have been done to any of the lands in question in this suit because of the construction and maintenance of the Copperas Creek lock and dam."

We think this instruction should not have been given. The object of introducing the testimony of William Hunter in connection with his claim against the State of Illinois was not to show that he had been paid for the destruction of his lands by water, but was to prove that he claimed and declared and testified, long before the waters of appellant were turned into

the Illinois River, that his land had been destroyed by water. It was immaterial to the effect of that evidence in this case whether William Hunter had been paid or not. The point was to show that the ancestor of appellees claimed, under oath, while he owned these lands that they had been practically destroyed long before the Sanitary District waters were sent down to that locality and, therefore, that the injury of which appellees are now complaining was not due to any action on the part of appellant. Still we do not regard the giving of it as reversible error for it is true that no evidence had been introduced to show that William Hunter had ever been paid by the state for such damage, and the instruction was therefore literally true.

Several of the instructions requested and given for appellees related to and authorized a recovery for the injury done by appellant to the fair cash market value of the interest of appellees in the land, while other given instructions made appellant liable for the depreciation in the fair cash market value of the lands, and appellant complains not only of this supposed inconsistency but also because the given instructions, as a whole, did not offer the jury any method for determining the interest of appellees in the land. Appellant cannot be heard to question the instructions given for appellees for these supposed defects, because it offered instructions of the same kind; for where an appellant has induced the giving of a certain class of instructions, it cannot complain of the same given at the request of the opposite party. Cicero & P. St. Ry. Co. v. Meixner, 160 Ill. 320; Chicago, B. & Q. R. Co. v. Murowski, 179 Ill. 77; McInturff v. Insurance Co. of N. A., 248 Ill. 92. Moreover the only person who could have any interest in these lands, aside from appellee, was their mother, the widow of William Hunter. As already suggested, her dower has not been set off to her, and in the absence of any such action her dower rights in this land cannot be considered here. It is obvious for the reasons already stated that her

178 Appellate Courts of Illinois.

Hunter v. The Sanitary District of Chicago, 179 Ill. App. 172.

homestead right in this tract of 160 acres does not exist or is merely nominal. Again, the 15th special interrogatory, requested by appellant and given to the jury asked what had been the depreciation in the fair cash market value of the interest of appellees in this tract of 160 acres by reason of the acts of appellant as charged in the declaration, and the jury gave as their answer the sum of $9,000 and returned their general verdict for appellees in that sum. This verdict, therefore, was for the depreciation of appellees' interest, only, in the land. The remittitur which we hereinafter require will fully cure any slight defect in the proofs in omitting to establish the amount of the depreciation to the widow's technical homestead estate in this 160 acres, if any she had, and any similar defect in the instructions as a whole.

Appellant complains because one of the instructions given for appellees contained a reference to the pleadings. If this was improper, appellant cannot be heard to complain of such action for many of its given instructions contained a like reference. Appellant complains of the giving of instruction No. 13 for appellees, which was as follows:

"While the plaintiffs must prove by a preponderance of the evidence in this case that they had the legal title to the land in question, yet you are charged that if the plaintiffs have proved by the greater weight of all the evidence in this case that they were in open, peaceable, notorious and exclusive possession either by themselves or tenants of the real estate described in the declaration in this case on and prior to the 17th day of January, 1900, and up to the commencement of this suit, then there is sufficient proof of their title for the purposes of this suit, in the absence of evidence tending to show that they do not have the legal title to said land."

This instruction was not intended to tell the jury for what a recovery could be had, but only to meet any question that might arise in the minds of the jury as to whether or not appellees had to prove their title from

the Government of the United States, and to inform the jury that open, peaceable, notorious and exclusive possession constituted sufficient proof of title in appellees for the purposes of this suit, and was therefore properly given.  See additional opinion on petition for rehearing in Zinzer v. Sanitary District, *supra*.  Appellant requested that fifteen special interrogatories be given to the jury.  The court gave the 14th and the 15th and refused the others.  The 14th special interrogatory was in relation to the other lands as to which the jury found appellant not guilty.  The 15th special interrogatory was as mentioned above.  We are of opinion that the other requested interrogatories were mainly evidentiary and were properly refused.  Chicago & N. W. R. Co. v. Dunleavy, 129 Ill. 132; Lake Erie & W. R. Co. v. Morain, 140 Ill. 117; Pike v. City of Chicago, 155 Ill. 656; Chicago & A. R. Co. v. Pearson, 184 Ill. 386; Chicago & A. R. Co. v. Harrington, 192 Ill. 9.

Upon a careful consideration of the evidence we are of opinion that the damages awarded are excessive. William Hunter, the ancestor of appellees, testified under oath, as already stated, that these lands were practically destroyed by the construction and operation of the Copperas Creek Dam, many years before the Sanitary District waters were turned into the Illinois river, and this declaration of the former owner is competent evidence against the heirs succeeding him in the title.  It is true that, in spite of his belief at that time that his land had been destroyed, he had a right to reclaim the land afterwards by tiling or otherwise if he could.  It is shown that he did put in some tile, but this tile has been allowed to become filled up and has not been kept sufficiently open to be adequate for carrying off the water.  The evidence shows that prior to 1900, the year when the waters of appellant were turned into the Illinois river, this land, or at least a considerable portion of it, was wet and soft and unfit for cultivation.  Various witnesses testified that a

considerable portion of this 160 acre tract was not farmed at all for many years prior to 1900. It is clear to us, from a study of the evidence, that much of the damage to this land is due to causes that existed before appellant turned its waters into this locality, one source of such damages being a small stream or creek, which comes down from the hills to the east of the land in question and flows directly across it, the waters from which, in flood times, spread across the land. It is fair to assume that this verdict, which we regard as excessive, has been partly procured by improper conduct on the part of appellee's attorney in the cross-examination of many of appellant's witnesses and in his argument to the jury. His questions to appellant's witnesses contain insinuations which were improper and were calculated to impress the jury. He was entitled to inquire of appellant's witnesses whether they had been taken over the land by agents of appellant, whether they had been paid anything for the time so spent, and whether any efforts had been made by representatives of appellant to cause them to testify favorably to it and contrary to their own judgment, and, in general, to ascertain if the witnesses had been subjected to any improper influences, but in many instances appellees' attorney went much further in that direction than was proper or can be countenanced by this court. In his argument, appellees' attorney made a strong plea to the jury on the ground that appellees were women, and he reminded the jury that the last persons on the battle field are women, that the nurses who bind up the wounds and moisten the lips of dying soldiers are women, that the first star sewed on the flag of our Government was put there by a woman, and that "the old song that you love and I love and the Hunter girls love was written by a woman." He told the jury that these women loved their home and their mother and the memory of their father and that all the slime that could come from the tongue of the maligner of his memory could not induce appellees to put a stain on

their father's memory for all the money that it cost
to build the Sanitary District canal. It is true that
the court sustained an objection to these remarks, but
this did not remove their effect upon the jury. The
same offense was practically repeated, and the jury
were told by him, "You have no right to run away
from your duty because the sex of these plaintiffs is
the same as that of your mother and mine." One of
the attorneys for appellant had previously attacked
the plaintiffs in his argument, and perhaps aggravated
plaintiff's attorney and to some extent excused him.
But these appeals to the jury because of the sex of the
plaintiffs were highly improper and were calculated to
inflame the jury and we conclude that they aided in
producing this excessive verdict. In the trial of this
case there were many improper remarks by counsel,
and, also in their briefs here, and were it not for the
expense likely to be entailed upon the parties, we
should have been disposed to strike out portions of
each of the briefs and require them to be reprinted in
more courteous language. The trial judge interfered
urgently to stop this course of conduct in the court be-
low and succeeded in part, but the conduct of counsel
was so persistent that the mere rulings of the court
probably did not remove the impression from the
minds of the jury. In view of the testimony of Wil-
liam Hunter and of the shape and contour and condi-
tion of the land as revealed by the evidence, we are
of opinion that this verdict ought not to be allowed
to stand for more than $6,000. This opinion will be
lodged with the clerk and counsel notified, and if
within seven days appellees remit $3,000 of the judg-
ment, the judgment will be affirmed for $6,000 at the
costs of appellees; otherwise, it will be reversed and
remanded for a new trial.

*Affirmed upon remittitur.*

Appellee having entered a remittitur herein in the
sum of $3,000, the judgment is therefore affirmed in
the sum of $6,000 at the costs of appellees.